NANCY L. STAGG, CA Bar No. 157034
    nstagg@foley.com
ARY CHANG, CA Bar No. 244247
    achang@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
TELEPHONE:  858.847.6757
FACSIMILE:   858.792.6773

Attorneys for Defendants
AVAGO TECHNOLOGIES U.S. INC.,
AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE) PTE. LTD.,
AVAGO TECHNOLOGIES TRADING LTD., AND
AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IPTRONICS INC.; MELLANOX TECHNOLOGIES DENMARK APS,<br><br>             Plaintiffs,<br><br>vs.<br><br>AVAGO TECHNOLOGIES U.S. INC., AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE) PTE. LTD., AVAGO TECHNOLOGIES TRADING LTD., AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD.,<br><br>             Defendants. | Case No. 5:14-cv-05647-BLF (PSG)<br><br>**DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH PREJUDICE UNDER FED. R. CIV. P. 12(B)(6)**<br><br>Date: June 11, 2015<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Judge:  Hon. Beth L. Freeman |

# TABLE OF CONTENTS

**PAGE**

I.   Summary of Reasons Plaintiffs' Antitrust Complaint Must Be Dismissed ............................ 1

II.  Facts and Procedural History ................................................................................... 2

    A.   Northern District Case:  *Avago Technologies U.S., Inc., et al. v. IPtronics, Inc., et al.*, Case No. 5:10-CV-02863-EJD (PSG) ............................................ 2

    B.   International Trade Commission Investigation No. 337-TA-860 By Avago Against IPtronics ...................................................................................... 3

    C.   IPtronics' Motion for Leave to Amend in *Avago v. IPtronics* ............................ 4

    D.   IPtronics' Complaint in this Action ........................................................... 5

        1.   The Complaint's Allegations .......................................................... 5

III. Applicable Legal Standards ..................................................................................... 7

    A.   Motion to Dismiss Under Rule 12(b)(6) ...................................................... 7

    B.   The Definition of "Objectively Baseless" Litigation Under the *Noerr-Pennington* Doctrine ................................................................................ 9

IV.  IPtronics Cannot Prove the ITC Investigation Was "Objectively Baseless" ...................... 11

    A.   The ITC Investigation Cannot Be Deemed Objectively Baseless Because Avago Prevailed on Its Claim of Infringement Related to the '595 Patent and Defeated IPtronics' Assertion of Patent Invalidity As to the '456 Patent ................ 11

    B.   The ITC Investigation As to the '456 Patent Cannot Have Been Objectively Baseless Because the ITC Authorized the Investigation ................................... 15

        1.   ITC's Higher Pleading and Evidentiary Requirements ........................... 15

        2.   The ITC Must Authorize An Investigation ......................................... 17

    C.   The Record of Which This Court Can and Should Take Judicial Notice Shows That Avago's Claim of Infringement of the '456 Patent Was Not Objectively Baseless ................................................................................ 18

    D.   Avago's Patent Litigation Against Other Parties Does Not Render the ITC Investigation Objectively Baseless ............................................................. 22

V.      Conclusion ................................................................................................................ 24

4823-3182-9538.1

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

**Cases**

*Amarel v. Connell*,
   102 F.3d 1494 (9th Cir. 1996) ..............................................................................23

*Amgen, Inc. v. Hoffman-La Roche, Ltd.*,
   480 F. Supp. 2d 462 (D. Mass. 2007) ....................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................7

*Avery Dennison Corp. v. Cont'l Datalabel, Inc.*,
   2010 U.S. Dist. LEXIS 126030 (N.D. Ill. Nov. 30, 2010)......................................21

*BE & K Const. Co. v. N.L.R.B.*,
   536 U.S. 516 (2002) ..................................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................7

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
   886 F. Supp. 377 (S.D.N.Y. 1995)..........................................................................18

*Boston Sci. Corp. v. Schneider (Eur.) AG*,
   983 F. Supp. 245 (D. Mass. 1997) ..........................................................................11

*Branch v. Turnell*,
   14 F.3d 449 (9th Cir. 1994) .......................................................................................8

*Breville Pty. Ltd. v. Storebound LLC*,
   2013 U.S. Dist. LEXIS 58893 (N.D. Cal. Apr. 24, 2013) ........................11, 13, 14

*Concrete Unltd., Inc. v. Cementcraft, Inc.*,
   776 F.2d 1537 (Fed. Cir. 1985)...............................................................................12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   Case No. 2013-1588, -1589, and 2014-1112, -1687, at *12 (Fed. Cir. Dec. 23, 2014)..................9, 12

*Dentsply Int'l v. New Tech Co.*,
   1996 U.S. Dist. LEXIS 19846 (D. Del. 1996) ........................................................11

*Dominant Semiconductors Sd. Bhd. v. Osram GMBH*,
   524 F.3d 1254 (Fed. Cir. 2008)........................................................10, 19, 20, 21

*Durning v. First Boston Corp.*,
   815 F.2d 1265 (9th Cir. 1987) ............................................................................9, 11

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961)...................................................................................................9

*Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*,
  914 F.2d 556 (4th Cir. 1990) ...................................................................................10

*Emcore Corp. v. Int'l Trade Comm'm*,
  449 Fed. Appx. 918 (Fed. Cir. 2011) .........................................................................7

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
  629 F.3d 1278 (Fed. Cir. 2010)................................................................................23

*In re Flonase Antitrust Litig.*,
  795 F. Supp. 2d 300 (E.D. Pa. 2011) ..................................................................11, 23

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary
  Workers*,
  542 F.2d 1076 (9th Cir. 1976) .............................................................................8, 23

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) .................................................................................11

*Gaymar Indus. v. Cincinnati Sub-Zero Prods.*,
  2013 U.S. Dist. LEXIS 168543 (W.D.N.Y. Aug. 8, 2013) ........................................22

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...................................................................................7

*Global Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006)......................................................................................8

*Ileto v. Glock, Inc.*,
  349 F.3d 1191 (9th Cir. 2003) ...................................................................................7

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
  449 F.3d 1048 (9th Cir. 2007) ...................................................................................8

*Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*,
  192 F. Supp. 2d 519 (M.D. La. 2001)......................................................................23

*Matsushita Elecs. Corp. v. Loral Corp.*,
  974 F. Supp. 345 (S.D.N.Y. 1997)...........................................................................11

*Meridian Project Sys. v. Hardin Const. Co.*,
  404 F. Supp. 2d 1214 (E.D. Cal. 2005)....................................................................11

*Or. Natural Res. Council v. Mohla*,
  944 F.2d 531 (9th Cir. 1991) ..............................................................................8, 23

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ..................................................................8

*Primetime 24 Joint Venture v. Nat'l Broad. Co.*,
    219 F.3d 92 (2d Cir. 2000)....................................................................23

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc.*,
    508 U.S. 49 (1993)...................................................................... *passim*

*RPC, Inc. v. Prudhomme*,
    2007 U.S. Dist. LEXIS 3946 (E.D. Tex. Jan. 19, 2007) ..................11

*Sandisk Corp. v. STMicroelectronics, Inc.*,
    2008 U.S. Dist. LEXIS 87344 (N.D. Cal Oct. 17, 2008)..................11

*Seiko Epson Corp. v. Glory South Software Mfg., Inc.*,
    684 F. Supp. 2d 1231 (D. Or. 2010) ...........................................10, 13

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ...........................................................7

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ...........................................................8

*Theme Promotions, Inc. v. News America Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ...........................................................23

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965)...........................................................................9

*VAE Nortrak N. Am., Inc. v. Progress Rail Servs. Corp.*,
    459 F. Supp. 2d 1142 (N.D. Ala. 2006)...........................................11

*Von Saher v. Norton Simon Museum of Arts at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) .............................................................9

**Statutes**

19 U.S.C. § 1337(b) ...............................................................................3

Tariff Act ..............................................................................14, 16, 17

4823-3182-9538.1

**Other Authorities**

19 C.F.R. 210.9 ..........................................................................................................16, 17

19 C.F.R. 210.10(a)(1) ........................................................................................................17

19 C.F.R. 210.10(a)(3) ........................................................................................................17

19 C.F.R. 210.12(a)(1) ........................................................................................................16

4823-3182-9538.1

## I.   <u>Summary of Reasons Plaintiffs' Antitrust Complaint Must Be Dismissed</u>

The Complaint filed by IPtronics[1] alleges that a prior proceeding against IPtronics and other respondents in the International Trade Commission ("ITC" or "ITC Investigation"), which was instituted by the ITC based on its review of the complaint filed by Avago, violated antitrust laws.  Under controlling precedent from the United States Supreme Court, IPtronics must show—as a threshold matter—that the prior ITC Investigation was both objectively and subjectively baseless before it can proceed to the merits of the antitrust claim.

What the Complaint fails to state is that Avago *prevailed* in the ITC Investigation on one of two patents asserted.  Avago's success in the ITC bars IPtronics' antitrust claims as a matter of law.  When taking into account matters judicially noticeable—namely, the ITC Investigation proceedings and the result thereof—Avago's ITC Investigation had actual, proven merit and was not objectively baseless.  Moreover, the Complaint fails to mention that the ITC itself must vote to institute  an investigation after reviewing the information presented in a complaint, further demonstrating that the ITC Investigation was not objectively baseless because the ITC initiated the investigation.  As a result, Avago's conduct is immunized from liability under the *Noerr-Pennington* doctrine.  Finally, the Complaint's factual allegations regarding the objective merit of Avago's evidence of infringement relating to its second patent overwhelmingly focus on the quality of the evidence Avago had before the ITC Investigation was instituted, rather than on the ITC Administrative Law Judge's 13-page analysis of the infringement evidence presented at the trial.  The controlling case law establishes that, as a matter of law, IPtronics' focus on the quality of Avago's pre-suit investigation fails to provide adequate support for its claim of sham litigation.  A review of the ALJ's actual decision on the issues as to the second patent demonstrates that IPtronics' Complaint merely invites this Court do what the U.S. Supreme Court has

---

[1] Plaintiffs IPtronics Inc. and Mellanox Technologies Denmark ApS (collectively, "IPtronics").

warned against: "a court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation . . . ."  *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc.*, 508 U.S. 49, 61 n.5 (1993).

Avago's Motion to Dismiss should be granted for the following reasons:

- The ITC found in favor of Avago on one of two patents asserted.  To defeat *Noerr-Pennington* immunity, the *entire lawsuit* must be objectively baseless.  Thus, the entire ITC Investigation could not have been objectively baseless because Avago prevailed on one of its two patents.

- The ITC, not Avago, determined that an investigation should be instituted.  Thus, the ITC proceeding could not have been objectively baseless because an independent governmental body made a threshold determination that there was a sufficient basis to institute the proceeding.

- As a matter of law, the Complaint's focus on whether Avago's pre-suit investigation was adequate addresses the wrong issue; even if Avago's pre-suit investigation as to the second patent was not exhaustingly thorough, that would not establish that the litigation was objectively baseless.  Nor does the mere fact that the ALJ ultimately found that Avago did not meet its evidentiary burden to establish infringement of the second patent mean that that claim was objectively baseless.  The Complaint itself admits that Avago presented a technical expert at the ITC hearing who testified that, based on tests he conducted, it was his opinion that the accused products infringed the second patent.  When viewed in the context of the ALJ's 13-page discussion of that testimony, the Complaint's selective discussion of certain snippets and its conclusory language fall short of meeting the heightened pleading standards required for such claims.

- Avago did defeat IPtronics' invalidity attack on the second patent; thus, Avago prevailed in part on the second patent by defeating IPtronics' affirmative defense.

## II.   Facts and Procedural History

### A.   Northern District Case:  *Avago Technologies U.S., Inc., et al. v. IPtronics, Inc., et al., Case No. 5:10-CV-02863-EJD (PSG)*

On June 29, 2010, Avago filed a patent infringement action in this District against IPtronics. *See Avago Technologies U.S., Inc., et al. v. IPtronics, Inc., et al.*, Case No. 5:10-CV-02863-EJD (PSG) ("*Avago v. IPtronics*").  In its original complaint, Avago alleged two counts of patent infringement against IPtronics.  *See* Avago's Request for Judicial Notice ("RFJN"), No. 1.  Specifically, Avago alleged that IPtronics' sales and offers for sale of certain products violated Avago's rights under two of

Avago's patents:  U.S. Patent Nos. 5,359,447 (the "'447 patent") and 6,947,456 (the "'456 patent").  *Id.*

IPtronics counterclaimed and sought declaratory judgment of invalidity and non-infringement as to both

patents.  *See* RFJN, No. 2.

**B.      International Trade Commission Investigation No. 337-TA-860 By Avago Against IPtronics**

On September 25, 2012, during the pendency of *Avago v. IPtronics*, Avago filed a complaint

with the ITC asking the ITC to initiate an investigation against IPtronics and other respondents for

infringement of the '456 patent and against the other respondents for infringement of another Avago

patent, U.S. Patent No. 5,596,595 (the "'595 patent") ("ITC Investigation").  *See* Complaint (D.I. 1), at ¶

16; *see also* RFJN, No. 3; Declaration of Ary Chang In Support of Request for Judicial Notice ("Chang

Decl."), Ex. 1 (77 Fed. Reg. 65713 (Oct. 30, 2012)).  Pursuant to its powers under 19 U.S.C. § 1337(b),

the ITC reviewed the information Avago had presented to it, determined that it was sufficient to warrant

the institution of an investigation, and instituted an investigation.  *See id.*  On February 15, 2013, the

District Court stayed all proceedings in *Avago v. IPtronics* pending the outcome of the ITC

Investigation.  *See* RFJN, No. 4.

After discovery and a lengthy evidentiary hearing before the Administrative Law Judge in the

ITC Investigation, the ALJ determined, and the ITC confirmed, that the '595 patent had been infringed.

*See* RFJN, Nos. 5 and 6; *see also* Chang Decl., Ex. 2 (ALJ Initial Determination), and Ex. 3 (79 Fed.

Reg. 22702 (Apr. 17, 2014).  Regarding the '456 patent, the ALJ found that Avago presented an expert

witness who opined that the accused products infringed claims of the '456 patent, and who presented

data supporting that opinion, but ultimately concluded that the expert opinion and testing was not

sufficiently reliable to carry Avago's burden of proving infringement of the patent.  *See* Chang Decl.,

Ex. 2, at 96 – 109 (ALJ Initial Determination).  The ALJ also found that IPtronics had failed to prove

that the claims for the '456 patent were invalid.  *See id.*, at 138 – 160; Chang Decl., Ex. 3 (79 Fed. Reg.

22702 (Apr. 17, 2014)).  Thus, although the ALJ did not find sufficient evidence supporting

infringement of the '456 patent, Avago still prevailed on IPtronics' invalidity attack.  Moreover, the ALJ did not conclude that IPtronics' products *did not* infringe the '456 patent; rather, the ALJ concluded that Avago had not met its *evidentiary burden* of proving infringement.  *See* Chang Decl., Ex. 2, at 104, 108.

### C.   IPtronics' Motion for Leave to Amend in *Avago v. IPtronics*

On July 23, 2014, the District Court lifted the stay in *Avago v. IPtronics* after the ITC Investigation finally resolved.  *See* RFJN, No. 7.  IPtronics filed a motion for leave to amend its counterclaims, including for the first time, adding antitrust claims related to Avago's assertion of the '456 and '447 patents in *Avago v. IPtronics*.  *See* RFJN, No. 8 (Mot. to Am.); RFJN, No. 9; Chang Decl., Ex. 4 (IPtronics' Proposed Second Am. Answer and Countercls.).  Those claims were more extensive than the antitrust claims presented in this Complaint.  The difference between the two claims is that this case focuses solely on Avago's assertion of the '456 patent in the *ITC Investigation*, whereas the proposed antitrust claims in *Avago v. IPtronics* included allegations relating to Avago's assertion of the '456 and '447 patents against IPtronics *in that case*.[2]  *Compare* Complaint (D.I. 1), at ¶¶ 16, 22-39, *with* Chang Decl. Ex. 4, at ¶¶ 34, 40-76.

On December 10, 2014, the District Court denied in part IPtronics' motion for leave to amend its pleadings to assert the antitrust claims in that case.  *See* RFJN, No. 10; Chang Decl., Ex. 5, at 10-13. The District Court denied IPtronics' motion for leave to amend on the grounds that IPtronics unduly delayed in bringing the amendments and that the amendments, even if allowed, would cause undue prejudice to Avago at the late stage in that litigation.  *See id.*

---

[2] In addition, IPtronics does not attempt to reassert its unfair competition claims under the Lanham Act in this case.  *Compare* Chang Decl., Ex. 4, at Counterclaim ¶¶ 204-11, *with* Complaint (D.I. 1).

D.   **IPtronics' Complaint in this Action**

After the District Court denied IPtronics' motion for leave to amend to assert its antitrust

counterclaims in *Avago v. IPtronics*, IPtronics filed this separate lawsuit.

1.   **The Complaint's Allegations**

The Complaint generally alleges that Avago's initiation of the ITC Investigation relating to the

'456 patent was objectively baseless and done with anti-competitive intent in violation of the antitrust

laws.  Notably, the Complaint conspicuously *omits* any reference to the '595 patent that was the other

half of the ITC Investigation.  *See* Chang Decl., Ex. 1 (77 Fed. Reg. 65713 (Oct. 30, 2012)).[3]  Also

omitted is any reference to the fact that Avago prevailed on IPtronics' invalidity attack on the '456

patent.  *See* Chang Decl., Ex. 2, at 138 – 160 (ALJ Initial Determination); Chang Decl., Ex. 3 (79 Fed.

Reg. 22702 (Apr. 17, 2014)).

The Complaint focuses on alleged shortcomings in Avago's pre-filing investigation as to whether

IPtronics' products infringed the '456 patent.  *See* Complaint (D.I. 1), at ¶¶ 22-31.  The Complaint

alleges that Avago's expert in the ITC Investigation did not conduct any testing of IPtronics' products

before the ITC complaint was filed.  *Id.*, at ¶¶ 24-26, 28-29.  IPtronics alleges that Avago's infringement

claim chart submitted in support of its ITC complaint relied only on a few product briefs or reference

design documents as opposed to more rigorous pre-litigation testing.  *Id.*, at ¶ 23.  The Complaint

concedes that Avago had a technical witness who performed testing on IPtronics' products to determine

whether those products infringed claims of the '456 patent, but alleges that the testing was of "dubious"

value because it was performed after the ITC Investigation commenced.  *Id.*, at ¶¶ 30-31.  As to the

evidence actually presented at the hearing itself, rather than providing a fair summary of the ALJ's 13-

page discussion of the infringement proof Avago presented at the hearing, the Complaint cites to only a

---

[3]  This is likely because Avago prevailed on the '595 patent, facially demonstrating the ITC
Investigation was not objectively baseless.  *See* Chang Decl., Ex. 2, at ii, 94-95 (ALJ Initial
Determination); Chang Decl., Ex. 3 (79 Fed. Reg. 22702 (Apr. 17, 2014)).

MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:14-cv-05647-BLF (PSG)

-5-

few snippets from the testimony of Avago's and IPtronics' experts and from a submission by ITC staff, and to a few words from the ALJ's determination.  The Complaint concludes that collectively all of the above "defects" in Avago's evidentiary proof meant that the ITC Investigation was objectively baseless.  *Id.*, at ¶ 38.

As to the issue of Avago's subjective intent, the Complaint alleges that Avago's representatives made various anti-competitive statements that demonstrate the ITC Investigation was subjectively baseless and initiated in bad faith.  *Id.*, at ¶¶ 41-43.  IPtronics contends that Avago initiated the ITC Investigation for the sole purpose of harming IPtronics by extending litigation at all costs to deplete IPtronics' resources.  *Id.*, at ¶¶ 40, 44.  However, the alleged statements, even if deemed true for the purposes of this Motion, were made during ITC-mandated settlement negotiations (and thus are protected by the settlement privilege in Rule 408 of the Federal Rules of Evidence).  *See, e.g.*, *id.*, at ¶ 43; *see also* D.I. 29, at ¶¶ 8-11, and Exs. 2 – 5 (Chang Decl. Supp. of Administrative Mot. To Seal).

Finally, as further alleged evidence of Avago's subjective intent, the Complaint alleges that Avago engaged in a course of conduct in filing patent infringement lawsuits against competitors in an effort to injure and harass those competitors.  *Id.*, at ¶¶ 48-49.  The Complaint lists four "representative" lawsuits in which Avago sued a competitor for patent infringement.  *Id.*, at ¶¶ 50-55.[4]  The Complaint fails to allege that IPtronics was a party to any of those lawsuits, and is silent as to any facts why those other cases were objectively baseless.  Indeed, the Complaint fails to mention that Avago prevailed on its claim in a separate ITC proceeding that one of those listed defendants, Emcore, had infringed an Avago patent, which the Federal Circuit affirmed on appeal.  *See* RFJN, No. 11; Chang Decl., Ex. 6;

---

[4] The Complaint also makes allegations regarding other elements of an antitrust cause of action, such as defining the relevant market.  *See* Complaint, at ¶¶ 57-70.  These allegations are not relevant to this Motion and therefore will not be addressed in detail.

MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:14-cv-05647-BLF (PSG)

-6-

*Emcore Corp. v. Int'l Trade Comm'm*, 449 Fed. Appx. 918 (Fed. Cir. 2011).  Instead, the Complaint only alleges that several of the cases were ultimately dismissed.  *See* Complaint, at ¶¶ 50-55.

## III.    Applicable Legal Standards

### A.    Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss tests the legal sufficiency of the claims alleged in a complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  A party may move for dismissal if the complaint or any cause of action therein "fail[s] to state a claim upon which relief can be granted."  *See* FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Dismissal is proper when the complaint either fails to allege a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted).  Thus, a plaintiff must allege facts that give rise to "more than a sheer possibility" that a defendant acted unlawfully.  *Id.*  The complaint's factual allegations must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.  Courts are not required to accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  When a complaint alleges facts that are simply consistent with a defendant's liability, the complaint stops short of the line between possibility and plausibility of entitlement to relief.  *Id.*

Moreover, under Ninth Circuit law, when a complaint must first overcome *Noerr-Pennington* immunity before the complaint can proceed on the merits (as is the case here), the complaint must meet a heightened pleading standard.  "Where a claim involves the right to petition governmental bodies under *Noerr-Pennington* . . . [courts] apply a heightened pleading standard."  *Or. Natural Res. Council*

*v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991). "In order to state a claim for relief . . . a complaint must include allegations of the specific activities" in which defendant has engaged that deprive it of *Noerr-Pennington* immunity. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976). The heightened pleading standard is necessary to avoid a chilling effect on the exercise of fundamental First Amendment rights. *Mohla*, 944 F.2d at 533. "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." *Id.*

Courts may also take judicial notice when ruling on a motion to dismiss. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n. 9 (9th Cir. 2012); *see also* FED. R. EVID. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment provided the facts noticed are not subject to reasonable dispute. *Skilstaf*, 669 F.3d at 1016 n. 9; *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 449 F.3d 1048, 1052 (9th Cir. 2007).

Courts may also reference documents referred to in a complaint but not attached to the complaint. *Branch v. Turnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). In fact, courts can reference documents not even mentioned in a complaint when reference to those documents has been deliberately omitted due to clever drafting. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in*, *Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006) (referencing documents not mentioned in complaint "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting"). Courts need not accept as true factual allegations that are contradicted by

4823-3182-9538.1

matters judicially noticed or by documents underlying a complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Von Saher v. Norton Simon Museum of Arts at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

**B.     The Definition of "Objectively Baseless" Litigation Under the *Noerr-Pennington* Doctrine**

Under *Noerr-Pennington*,[5] a person's act of petitioning the government for redress is presumptively shielded from liability by the First Amendment.  *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, Case No. 2013-1588, -1589, and 2014-1112, -1687, at *12 (Fed. Cir. Dec. 23, 2014) (slip. op.).  To overcome the presumption against liability, a plaintiff must establish that the defendant's instigation of litigation was merely a sham.  *Prof'l Real Estate*, 508 U.S. at 60.[6]

To prove sham litigation, a plaintiff must demonstrate that (1) the litigation was objectively baseless; and (2) the defendant subjectively intended to harm plaintiff through the abuse of a governmental process itself, as opposed to any harms flowing from the outcome of that process.  *Id.*; *Content Extraction*, at * 13.  The two-tiered process requires a plaintiff "to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability."  *Prof'l Real Estate*, 508 U.S. at 61.

A sham litigation must be objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits."  *Id.*, at 60; *Content Extraction*, at *13.  Sham litigation must constitute the pursuit of claims "so baseless that no reasonable litigant could realistically expect to secure favorable relief."  *Prof'l Real Estate*, 508 U.S. at 62.  "If an objective litigant could conclude that

---

[5] *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

[6] However, proof of a sham merely deprives the defendant of *Noerr-Pennington* immunity.  The plaintiff must still prove the elements of the underlying claims.  *Id.*, at 61.

the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized . . . and an antitrust

claim premised on the sham exception must fail." *Id.*, at 60.  Indeed, "[a] winning lawsuit is by

definition a reasonable effort at petitioning for redress and therefore not a sham." *Id.*, at 61 n. 5.

Moreover, even if an antitrust defendant lost the underlying litigation, "a court must resist the

understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately

unsuccessful action must have been unreasonable or without foundation [because] even when the law or

the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable

ground for bringing suit." *Id.* (internal citations and quotations omitted).

In *Professional Real Estate*, the Supreme Court concluded that to prevail on a subsequent

antitrust claim based on "sham" litigation, a plaintiff must show that the *entire previous lawsuit* was

objectively baseless to qualify for sham litigation, and not just one claim within the lawsuit.  *See id.*, at

51 ("[L]itigation cannot be deprived of immunity as a sham unless *the litigation* is objectively baseless."

(emphasis added)); *id.*, at 60 ("[T]he *lawsuit* must be objectively baseless . . . .  If an objective litigant

could conclude that *the suit* is reasonably calculated to elicit a favorable outcome, *the suit* is immunized

. . . ." (emphases added)).  On that basis, as well as considerations of public policy, many lower courts

that have considered the issue have held that the entire lawsuit must be objectively baseless, and even if

the plaintiff prevailed only on one of several claims it asserted, the litigation in question could not, as a

matter of law, be deemed objectively baseless.[7]

---

[7] *See, e.g.*, *Dominant Semiconductors Sd. Bhd. v. Osram GMBH*, 524 F.3d 1254 (Fed. Cir. 2008) (even
though plaintiff had prevailed on only one of the ten patents in the prior ITC proceeding, the prior
litigation could not be deemed objectively baseless: "[W]hen an underlying infringement suit was not
unsuccessful, there is no basis to determine that the plaintiff in that suit lacked probable cause or, as it
applies to the present situation, had no objective basis to claim infringement before filing suit."); *Eden
Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 564-65 (4th Cir. 1990) (affirming
dismissal of a sham litigation counterclaim even though plaintiff had lost at trial on at least one of the
several claims it had asserted, holding, "Since [plaintiff] has succeeded in its breach of a contract claim
. . . this suit is hardly a sham."); *Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 684 F. Supp. 2d
1231 (D. Or. 2010) (dismissing monopolization claim based on sham litigation because one of many
patent infringement claims in underlying lawsuit was not baseless because patent owner had prevailed

MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:14-cv-05647-BLF (PSG)

-10-

**IV.    IPtronics Cannot Prove the ITC Investigation Was "Objectively Baseless"**

IPtronics must prove, as a threshold matter, that the ITC Investigation was objectively baseless.

Otherwise the current lawsuit cannot proceed under *Noerr-Pennington*.  It is here where the Complaint

fails as a matter of law.  The facts of which this Court can and should take judicial notice show that the

ITC Investigation was not objectively baseless because Avago prevailed in the ITC Investigation.

Therefore, the Complaint fails to state a claim upon which relief can be granted.

**A.    The ITC Investigation Cannot Be Deemed Objectively Baseless Because Avago
Prevailed on Its Claim of Infringement Related to the '595 Patent and Defeated
IPtronics' Assertion of Patent Invalidity As to the '456 Patent**

As noted above, the Supreme Court's language in *Professional Real Estate* and the great weight

of lower court decisions support Avago's position that a lawsuit is not objectively baseless when a party

prevails on some but not all claims in the prior litigation.  In addition to the weight of legal authority,

public policy also supports this outcome.  First, requiring that the entire lawsuit be objectively baseless

promotes the important First Amendment right to petition the government for redress of grievances, and

overcomes a chilling effect that a claim-by-claim analysis would create.  The Federal Circuit said as

---

on a prior infringement claim as to one of those patents in the ITC); *Meridian Project Sys. v. Hardin Const. Co.*, 404 F. Supp. 2d 1214 (E.D. Cal. 2005) (dismissing antitrust counterclaims because plaintiff only alleged one out of nine claims was baseless and not entire lawsuit); *Sandisk Corp. v. STMicroelectronics, Inc.*, 2008 U.S. Dist. LEXIS 87344, at *30-32 (N.D. Cal Oct. 17, 2008) (dismissing defendant's "sham" litigation counterclaim even though the ITC had previously found that the defendant's products did not infringe one of two asserted patents); *Breville Pty. Ltd. v. Storebound LLC*, 2013 U.S. Dist. LEXIS 58893 (N.D. Cal. Apr. 24, 2013) (interpreting *Prof'l Real Estate* as requiring objective baselessness of entire lawsuit); *VAE Nortrak N. Am., Inc. v. Progress Rail Servs. Corp.*, 459 F. Supp. 2d 1142, 1166 (N.D. Ala. 2006) (same); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 357 n.20 (S.D.N.Y. 1997) (noting that some of patentee's arguments were not objectively baseless "is enough to cloak [patentee] in *Noerr-Pennington* immunity"); *Boston Sci. Corp. v. Schneider (Eur.) AG*, 983 F. Supp. 245, 272-73 (D. Mass. 1997) (expressing doubts that *Noerr-Pennington* doctrine applies to independent claims as opposed to an entire suit); *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 311-12 (E.D. Pa. 2011) ("[C]onduct is not a sham if at least one claim in the lawsuit has objective merit."); *RPC, Inc. v. Prudhomme*, 2007 U.S. Dist. LEXIS 3946, at *12 (E.D. Tex. Jan. 19, 2007) ("Even if said claim was wholly without merit, which it is not, this would not be sufficient to render the entire litigation baseless."); *Dentsply Int'l v. New Tech Co.*, 1996 U.S. Dist. LEXIS 19846, at *8-9 (D. Del. 1996) ("Therefore, if plaintiffs prevail on one of their counts, the sham aspect of the antitrust counterclaim must fail."); *see also Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183-84 (9th Cir. 2005) (observing *Noerr-Pennington* immunity applies to "bringing a sham *lawsuit*" (emphasis added)).

4823-3182-9538.1

much in *Content Extraction* when it observed, in the context of an extortion claim under RICO, that "[t]reating meritless litigation as a form of extortion punishable under RICO would substantially chill even valid court petitioning, as it would subject almost any unsuccessful lawsuit or set of lawsuits to a colorable claim of a RICO violation."[8]  *See Content Extraction*, at *12.  Claim-by-claim analysis creates a chilling effect on government petitioning because a petitioner may not bring all claims it otherwise could simply out of fear that failure on any single claim would result in antitrust liability.  This is contrary to the Supreme Court's admonishment regarding unsuccessful lawsuits:  "[A] court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation . . . ."  *Prof'l Real Estate*, 508 U.S. at 61 n.5; *see also Concrete Unltd., Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985) (simply bringing an unsuccessful infringement suit does not mean the plaintiff is subject to antitrust liability).

    <u>Second</u>, a claim-by-claim approach would also be inconsistent with the Supreme Court's language that the "lawsuit" (not any single claim) must be objectively baseless.  *See id.*, at 60 ("[T]he lawsuit must be objectively baseless . . . ."); *id.* ("Only if the challenged litigation is objectively baseless may a court examine the litigant's subjective intent."); *id.*, at 61 (discussing use of "governmental process" generally).  Moreover, the Supreme Court recognized that "even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.*, at 61 n.5.  Because a lawsuit can involve many claims and counterclaims arising out of the same transaction or occurrence, it is economical and efficient (and sometimes even required) to bring all claims related to that transaction or occurrence to avoid piecemeal litigation or later bar under *res judicata* or collateral estoppel.  Some claims may have stronger evidentiary support at the outset, but

---

[8] Although *Content Extraction* discussed RICO violations, the Federal Circuit analyzed *Noerr-Pennington* under the framework set forth in *Professional Real Estate*.

that does not mean the weaker claims are objectively baseless.  Such a holding would chill government petitioning by forcing a plaintiff to choose between forfeiting claims or face  antitrust liability.

Third, courts have rejected the "slippery slope" argument that a patent holder will assert frivolous claims as long as one patent is found to have been infringed.  For example, the court in *Breville* specifically rejected the "slippery slope" argument that "'patent holders will be able to improperly wield their monopoly-like assets with immunity from the antitrust laws as long as they have at least one patent they can reasonably contend is infringed.' . . .  Whatever potential danger this might pose in other cases, it is not presented by a lawsuit which brings two infringement claims, one of which is concededly nonfrivolous."  2013 U.S. Dist. LEXIS at *22-23.  *Breville* is analogous and presents the same sound reasoning for rejecting a claim-by-claim approach in this case:  Avago asserted two patents in the ITC Investigation, and proved infringement on one of them.  Thus, at least one of Avago's infringement claims was "concededly nonfrivolous."[9]

As a result, it can hardly be said that the ITC Investigation was objectively baseless.  Avago prevailed on one patent infringement claim for the '595 patent and defeated IPtronics' invalidity attack on the '456 patent.  As the United States Supreme Court observed in *Prof'l Real Estate*, "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."  *Prof'l Real Estate*, 508 U.S. at 61 n.5.  Avago's success in the ITC Investigation immunizes Avago's actions under *Noerr-Pennington*.

---

[9] See also, for example, *Seiko Epson*, where plaintiff sued defendant on a number of patents, including one that had previously been successfully asserted against the defendant in the ITC.  In granting plaintiff's motion to dismiss defendant's antitrust counterclaim, the court took judicial notice of the outcome of the ITC proceeding.  The court held because one of the patents plaintiff was asserting in the litigation had been found infringed and not invalid in a prior ITC proceeding, defendant's "sham litigation" counterclaim was doomed as a matter of law:  "The Court, therefore, concludes on this record that Seiko Epson's success in protecting its related patent rights before the ITC precludes as a matter of law [plaintiff's] Antitrust Counterclaim that Seiko Epson has engaged in 'sham litigation' in violation of § 2 of the Sherman Act."  684 F. Supp. 2d at 1238.

MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:14-cv-05647-BLF (PSG)

-13-

IPtronics' Complaint conspicuously omits any reference to Avago's assertion of and ultimate success on its patent infringement claim on the '595 patent. This critical omission seeks to mislead the Court to conclude that the '456 patent was the only patent at issue in the ITC Investigation. However, as the ALJ's decision demonstrates, Avago proved that certain accused products infringed the '595 patent. *See* Chang Decl., Ex. 2, at ii ("It is held that a violation of section 337 of the Tariff Act of 1930 . . . has occurred . . . by reason of infringement of certain claims of [the '595 patent]."); *see also id.*, at 79, 87, 90, 95 ("[T]he ALJ finds that Avago [has] proved infringement of [the contested claims of the '595 patent] for these products."). By definition, a success on the merits is a win and the lawsuit cannot be construed as objectively baseless. *See Prof'l Real Estate*, 508 U.S. 61 n.5. Avago's success on the '595 patent alone is sufficient to establish as a matter of law that the ITC Investigation was not objectively baseless, notwithstanding IPtronics' clever, purposeful attempt to exclude any reference to it. *See Breville*, 2013 U.S. Dist. LEXIS at *22-23.

IPtronics' Complaint also misrepresents the ITC Investigation's result as to the '456 patent. Although the ALJ concluded that Avago did not meet its evidentiary burden in proving infringement of the '456 patent, that conclusion is not evidence that Avago's assertion of infringement of the '456 patent in the ITC Investigation was objectively baseless. Specifically, the ALJ held that "Avago has simply failed to establish by a preponderance of the evidence that the output wave forms of the accused IPtronics VCSEL drivers include a negative peak portion within the meaning of the asserted claims." *See* Chang Decl., Ex. 2, at 104. Therefore, "the ALJ finds that Avago has failed to prove that the accused products satisfy this limitation of each of the asserted independent claims. And because [this] limitation appears in each of the asserted independent claims, it is also necessarily present in each of the asserted dependent claims. The ALJ finds that the accused products have not been shown to infringe the asserted claims of the '456 patent." *See id.*, at 108.

MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:14-cv-05647-BLF (PSG)

-14-

As to invalidity of the '456 patent, the ALJ held, "[IPtronics] failed to meet the heavy burden of proving invalidity based on a reference that was considered in depth by the examiner in the reexamination [of the '456 patent]." *See id.*, at 140-41; *id.*, at 147 (same); *id.*, at 142 ("[It] becomes apparent that [IPtronics'] anticipation arguments are meritless."); *id.*, at 144 ("The ALJ finds that [IPtronics has] fallen far short of meeting [its] burden of demonstrating by clear and convincing evidence that [a prior driver] that satisfied all of the limitations of the asserted claims of the '456 Patent was available by December 2000."); *id.*, at 153-54 (same regarding IPtronics' failure to show obviousness); *id.*, at 160 (same regarding IPtronics' failure to show indefiniteness).

**B.**     **The ITC Investigation As to the '456 Patent Cannot Have Been Objectively Baseless Because the ITC Authorized the Investigation**

Even if one were to ignore the language and rationale of the Supreme Court and lower federal courts on the issue and focus solely on whether Avago's assertion of its '456 patent the ITC Investigation was objectively baseless, the ITC Investigation could not have been objectively baseless because the ITC itself initiates an investigation, not the patent owner. In effect, the ITC acts as a gatekeeper for frivolous complaints by reviewing the patent owner's complaint and determining whether an investigation should proceed. Here, the ITC authorized the investigation after reviewing Avago's complaint and the initial evidence submitted. As a result, the governmental body responsible for making the ultimate determination as to the complaint's merits made an initial determination that the complaint set forth sufficient facts to warrant the investigation in the first place. When the ultimate adjudicator makes a threshold decision about the viability of a complaint's allegations, it can hardly be said that the action was objectively baseless.

**1.**     **ITC's Higher Pleading and Evidentiary Requirements**

Before the ITC Investigation formally commenced, Avago was required to meet heightened pleading standards by providing information substantiating its allegations that IPtronics and its customers were infringing the '456 patent and IPtronics' customers were infringing the '595 patent. The

ITC was then required by its own internal procedures to examine Avago's complaint for sufficiency and compliance with ITC regulations. *See* 19 C.F.R. 210.9. Pleading rules for ITC investigations require significant factual detail and supporting evidence to initiate a complaint.[10] For example, complaints filed with the ITC must be under oath. *See* 19 C.F.R. 210.12(a)(1). Complaints must "include a statement of facts containing the alleged unfair methods of competition and unfair acts," and must describe "specific instances of alleged unlawful importations or sales . . . ." *See id.*, at (a)(2) – (3). The Complaint must identify each party alleged to have violated the Tariff Act, and must identify whether the alleged unfair methods of competition and unfair acts are or have been the subject of any court of agency litigation, including a brief summary of that litigation. *See id.*, at (a)(4) – (5).

Violations of the Tariff Act based on patent infringement (such as Avago's ITC complaint) require even more facts and evidence. Tariff Act violations based on patent infringement must also include a description of the relevant domestic industry, which includes significant investment in plant and equipment, significant employment of labor or capital, and substantial investment in exploitation of the subject patent (including research, engineering, development, or licensing). *See id.*, at (a)(6)(i). Patent infringement complaints must also identify each U.S. patent, the owner of each U.S. patent, any licensees of each U.S. patent, any license agreements related to the U.S. patent, and any foreign patents or foreign patent applications (including those denied). *See id.*, at (a)(9)(i) – (v). Copies of the U.S. patents' prosecution history must also be included. *See id.*, at (c)(1) – (2).

In addition, patent infringement complaints must include a non-technical description of the invention in each U.S. patent, and a reference to the specific claims in each U.S. patent that allegedly are violated by the articles being imported or sold in the United States. *See id.*, at (a)(9)(vi) – (vii). Critically, a complaint must provide a showing that each defendant in the complaint is importing or

---

[10] The increased factual pleading in an ITC complaint is due in part to the expedited nature of ITC proceedings, thus requiring a complaining party to present more factual information up front.

selling an article in violation of the identified claims in the U.S. patents.  *See id.*, at (a)(9)(viii).  The complaint also includes "[d]rawings, photographs, or other visual representations" of both the domestic article involved and the alleged article that is imported or sold in the United States in violation of the U.S. patents and Tariff Act.  *See id.*, at (a)(9)(ix).  When practical, the complaint must include the actual domestic and imported articles as exhibits.  *See id.*, at (b).  Avago's complaint met each of these requirements because the ITC authorized the investigation.  *See* Chang Decl., Ex. 1 (77 Fed. Reg. 65713 (Oct. 30, 2012)).

### 2.      The ITC Must Authorize An Investigation

It is the ITC itself, not the complainant, that determines whether an investigation shall commence.  Thus, the ITC must rigorously review a complaint and the evidence submitted *before* a formal investigation ever commences.  First, "The [ITC] shall determine whether a complaint is properly filed and whether an investigation should be instituted on the basis of the complaint."  *See* 19 C.F.R. 210.10(a)(1).  Second, the ITC must also "identify sources of relevant information" to "assure itself of the availability thereof, and, if deemed necessary, prepare subpoenas therefore, and give attention to other preliminary matters."  *See* 19 C.F.R. 210.9.  Thus, the ITC conducts a preliminary investigation prior to commencing a formal investigation to determine if the complaint complies with the ITC's rules and, more importantly, provides an adequate basis to commence the investigation.  "If the Commission determines not to institute an investigation on the basis of the complaint, the complaint shall be dismissed . . . ."  *See* 19 C.F.R. 210.10(a)(3).  Thus, unlike a court of law where any party can formally initiate a lawsuit by filing a pleading and paying the requisite fee, an ITC investigation commences only after the ITC has determined at the outset that further investigation is warranted.  *See id.*

The fact that the ITC conducted an independent review of Avago's submissions and determined that a sufficient basis existed to commence an investigation demonstrates that the ITC Investigation was not objectively baseless, and therefore the ITC Investigation cannot serve as a basis for the antitrust

MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:14-cv-05647-BLF (PSG)

-17-

lawsuit.  For example, in *Amgen, Inc. v. Hoffman-La Roche, Ltd.*, 480 F. Supp. 2d 462 (D. Mass. 2007), the District Court denied the accused infringer's motion for leave to assert an antitrust claim based on a prior ITC proceeding.  The District Court held that the accused infringer's counterclaim failed to satisfy the "objective baselessness" prong of *Prof'l Real Estate*, noting, "As it was, Amgen's petition led to an independent investigation by the ITC.  The fact that the ITC later reached a decision adverse to Amgen's position does not by itself render the claim without foundation.  *The 'harm' that [defendant] alleges may have flowed from the ITC's independent decision to investigate and allow discovery, not Amgen's conduct.*"  *Id.*, at 470 (emphasis added).[11]  Here, as in *Amgen*, the ITC reviewed Avago's ITC complaint, conducted whatever preliminary investigation it believed necessary, and ultimately authorized an investigation based on Avago's complaint and supporting evidence.  *See* Chang Decl., Ex. 1  ("Having considered the complaint, the [ITC] ordered that . . . an investigation shall be instituted . . . .").

### C.   The Record of Which This Court Can and Should Take Judicial Notice Shows That Avago's Claim of Infringement of the '456 Patent Was Not Objectively Baseless

Even if this Court focused solely on Avago's assertion of the '456 patent in the ITC Investigation and not the broader scope that the investigation entailed, the ITC Investigation record demonstrates that Avago's assertion of the '456 patent in and of itself was not objectively baseless.  Success alone is not determinative of whether an action is objectively baseless.  The United States Supreme Court in *Prof'l Real Estate* specifically rejected this all-or-nothing approach: "[A] court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation [because] even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing

---

[11] *See also Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 381-82 (S.D.N.Y. 1995) (dismissing antitrust claims under Rule 12(b)(6) when claims were based on prior ITC proceeding, ITC reviewed complaint and initiated an investigation, ALJ denied several motions for summary determination, and ALJ found infringement on two patents, even though the ITC took no position on the infringement findings in its final determination).

4823-3182-9538.1

suit." *Prof'l Real Estate*, 508 U.S. at 61 n.5 (internal citations and quotations omitted); *see also*

*Dominant Semiconductors*, 524 F.3d at 1261 n.6 ("To the extent the ALJ found that [plaintiff] did not

infringe other [of defendant's] patents [in the underlying ITC investigation], we follow the Supreme

Court's instruction [in *Prof'l Real Estate*] to 'resist the understandable temptation' to conclude that

[defendant's] marketplace allegations regarding those patents were objectively baseless as a result.").

As discussed in Section IV(A), *supra*, Avago prevailed in the ITC Investigation on the issue of

validity of the '456 patent.  *See* Chang Decl., Ex. 2, at 138 – 160 (ALJ Initial Determination).  Just as

IPtronics neglected to inform the Court that Avago won in the ITC on its claim of infringement of the

'595 patent, again IPtronics' Complaint conspicuously omits any reference to its own challenge to the

validity of the '456 patent, or of Avago's success in overcoming that challenge.  In fact, the ALJ held,

"[IPtronics] failed to meet the heavy burden of proving invalidity based on a reference that was

considered in depth by the examiner in the reexamination [of the '456 patent]."  *See id.*, at 140-41; *id.*, at

147 (same); *id.*, at 142 (same regarding anticipation arguments); *id.*, at 144 (same regarding prior

availability); *id.*, at 153-54 (same regarding obviousness); *id.*, at 160 (same regarding indefiniteness).

The ALJ also concluded that although Avago was able to overcome the patent invalidity attack,

it was not able to meet its evidentiary burden in proving infringement.  The ALJ held, "Avago has

simply failed to establish by a preponderance of the evidence that the output wave forms of the accused

IPtronics VCSEL drivers include a negative peak portion within the meaning of the asserted claims."

*See id.*, at 104.  Therefore, "the ALJ finds that Avago has failed to prove that the accused products

satisfy this limitation of each of the asserted independent claims."  *Id.*, at 108.  As should be clear,

IPtronics' Complaint conveniently mentions only Avago's failure to meet its evidentiary burden on the

'456 patent, but omits any reference to Avago's success on IPtronics' invalidity attack on the '456

patent, or of Avago's proving infringement of the '595 patent.

MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:14-cv-05647-BLF (PSG)

-19-

**Avago's Complaint in the ITC Investigation Was Not Objectively Baseless Because Avago Presented Substantial Evidence Supporting Its Claims**

The Complaint alleges that Avago's alleged failure to have conducted a sufficient pre-suit investigation of the merits of its claim of infringement of the '456 patent demonstrates objective baselessness. *See, e.g.*, Complaint (D.I. 1), at ¶¶ 23-31, 38. That entire argument focuses on the wrong issue. The ALJ's decision itself demonstrates that Avago presented substantial evidence in support of its infringement case as to the '456 patent claims at the hearing, even though the ALJ ultimately decided that the evidence was insufficient to carry Avago's burden of persuasion. As addressed by the ALJ in more than thirteen pages of the Initial Determination, Avago submitted a substantial amount of evidence of IPtronics' infringement of the '456 patent from numerous sources. *See* Chang Decl., Ex. 2, at 95 – 109. Avago's evidence of IPtronics' infringement of the '456 patent included, *inter alia*, IPtronics' technical publications describing and depicting infringement; the results of physical testing of IPtronics' infringing VCSEL drivers conducted by IPtronics, by Avago's technical expert,[12] and by IPtronics' own technical expert; and testimony by Avago's technical expert and admissions by IPtronics' witnesses and third-party witnesses that included evidence of infringement. *Id.* Although the ALJ ultimately found that this testimony and other evidence was not sufficiently reliable to carry Avago's burden of proving infringement of the '456 patent claims, the ALJ's decision itself reflects that Avago's claim of infringement of the '456 patent was not objectively baseless.

The thrust of the Complaint is that alleged deficiencies in Avago's pre-suit investigation mean that the ITC proceeding was objectively baseless. But the Court of Appeals for the Federal Circuit unequivocally rejected the legal theory underlying IPtronics' Complaint in *Dominant Semiconductors*. In *Dominant Semiconductors*, the Federal Circuit was faced with a case strikingly similar to this case.

---

[12] IPtronics alleges that the ALJ's failure to weigh Dr. Deppe's expert opinion on the '456 patent demonstrates objective baselessness. *See* Complaint (D.I. 1), at ¶¶ 24-29. But IPtronics again (unsurprisingly) fails to mention that the ALJ adopted Dr. Deppe's testimony on IPtronics' infringement of the '595 patent. *See* Chang Decl., Ex. 2, at 70-78. As should be evident, matters judicially noticeable directly contradict IPtronics' selective factual allegations.

4823-3182-9538.1

There, the patent owner filed a complaint with the ITC alleging infringement of ten patents.  The ALJ found that the defendant had infringed only one of those ten patents, and found against the patent owner as to all of the other nine patents, finding some patents were not infringed and others were invalid.[13]  The accused infringer asserted an antitrust claim against the patent owner, alleging that the ITC proceeding constituted sham litigation.  The Federal Circuit succinctly summarized its lengthy rejection of the fundamental premise of IPtronics' Complaint—expressed in paragraphs 22 – 31 and thereafter—that the determination as to whether a prior lawsuit was  "objectively baseless" turns upon the quality of the patent owner's investigation prior to making its accusation of infringement, as follows: "In other words, objective baselessness requires a determination based on the record ultimately made in the infringement proceedings . . . and not on the basis of information available to the patentee at the time the allegations were made."  524 F.3d at 1264.[14]

Notably too, IPtronics never filed a motion for summary determination (the ITC equivalent of a motion for summary judgment) that its products did not infringe the claims of the '456 patent.  Rather, the ITC Investigation proceeded to a trial on the merits, which resulted in the ALJ's decision and the ITC's final determination.  *See* Chang Decl., Ex. 2 (ALJ Initial Determination); Chang Decl., Ex. 3 (ITC Final Determination).  IPtronics' failure to file a motion for summary determination of non-infringement of the '456 patent claims in the ITC Investigation should preclude IPtronics from now contending that Avago's claim of infringement of the '456 patent was objectively baseless.  IPtronics' decision to forego a motion for summary determination in the ITC Investigation is strong evidence that Avago's claim for

---

[13] Some of those noninfringement and invalidity determinations were later overturned, but the Federal Circuit's decision on the "sham litigation" issue makes clear that those later decisions "occurred after the district court granted the summary judgment motion at issue in this appeal, [and] thus we do not rely on them here."  *Dominant Semiconductors*, 524 F.3d at 1262 n. 7.

[14] *Accord Avery Dennison Corp. v. Cont'l Datalabel, Inc.*, 2010 U.S. Dist. LEXIS 126030, at *15 (N.D. Ill. Nov. 30, 2010) ("Continental's second allegation—that Avery failed to test Continental's products [for infringement]—is also insufficient to state a sham litigation claim.").

infringement of the '456 patent against IPtronics was not "objectively baseless."  For example, in *Gaymar Indus. v. Cincinnati Sub-Zero Prods.*, No. 08-CV-00299, 2013 U.S. Dist. LEXIS 168543 (W.D.N.Y. Aug. 8, 2013), the successful defendant in a prior patent infringement case sought a determination that the action brought by plaintiff was an "exceptional case," which required a finding that the prior litigation was objectively baseless.  The District Court rejected the defendant's argument, observing that the defendant's failure to move for summary judgment on the issue of patent invalidity in the prior proceeding (on which it eventually prevailed) demonstrated that the action was not objectively baseless.  *Id.*, at *17-18.

### D.   Avago's Patent Litigation Against Other Parties Does Not Render the ITC Investigation Objectively Baseless

The Complaint also alleges that Avago engaged in a course of conduct of filing patent infringement lawsuits against competitors to injure and harass those competitors.  *See* Complaint (D.I. 1), at ¶¶ 48-49.  The Complaint lists four lawsuits in which Avago sued a competitor for patent infringement.  *Id.*, at ¶¶ 50-55.  The Complaint's allegations as to these separate actions are irrelevant because the filing of other lawsuits does not demonstrate that Avago's ITC Investigation against IPtronics was objectively baseless.  The ITC Investigation is the sole subject of IPtronics' Complaint. *See id.*, at ¶¶ 16, 27-39.  Moreover, the Complaint fails to allege that IPtronics was a defendant in any of those other lawsuits, and in failing to do so, the Complaint fails to allege why IPtronics would have any standing to raise issues related to the other "representative" lawsuits or how IPtronics was harmed by the other lawsuits.  Thus, these other lawsuits have no bearing on the issue of the objective merits of the ITC Investigation.

Nor does the Complaint allege any factual basis for the bare conclusion that these other lawsuits may have been objectively or subjectively baseless, individually or collectively.  "In order to state a claim for relief . . . a complaint must include allegations of the specific activities" in which a defendant has engaged that deprive it of *Noerr-Pennington* immunity.  *Franchise Realty*, 542 F.2d at 1082.

MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:14-cv-05647-BLF (PSG)

-22-

"Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." *Mohla*, 944 F.2d at 533. For each "representative" lawsuit, the Complaint merely alleges that Avago filed a lawsuit that was ultimately dismissed. *See* Complaint (D.I. 1), at ¶¶ 50-55. The Complaint fails to allege any facts as to *how* each lawsuit was resolved, which could have included licensing agreements for Avago's products (and thus would be a winning lawsuit). *Id.* Merely reciting that Avago filed a lawsuit that was ultimately resolved through dismissal does not allege the "specific activities" that would deprive Avago of *Noerr-Pennington* immunity. *See Franchise Realty*, 542 F.2d at 1082; *see also Theme Promotions, Inc. v. News America Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) ("The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless.").[15]

Nor does the Complaint allege how these separate actions made the separate *ITC Investigation* objectively unreasonable. Thus, the Complaint lacks sufficient facts to support its conclusion that Avago engages in meritless litigation.[16]

_____

[15] The fact that these cases were settled cannot result in an adverse inference either. Public policy generally favors settlement of litigation. Moreover, a vast majority of patent infringement lawsuits settle before any merits decision. *See* John R. Allison, Mark A. Lemley & David L. Schwartz, *Understanding the Realities of Modern Patent Litigation*, 92 TEX. L. REV. 1769 (2014) (review of patent lawsuits filed in 2008 and 2009 reflected that "more than 90% of lawsuits settle before the court resolves summary judgment or tries the case").

[16] Moreover, the number of allegedly improper lawsuits pleaded in the Complaint does not rise to "a pattern or course of conduct." To qualify as a "pattern or practice" of successive filings, the number of petitions must be voluminous. *See USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994); *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1291 (Fed. Cir. 2010); *Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 101 (2d Cir. 2000). Courts have expressly declined to apply the Ninth's Circuit test in *USS-POSCO* to a series of five petitions. *See In re Flonase*, 795 F. Supp. 2d 300, 310 n.11 (E.D. Pa. 2011). Other courts have refused to apply the test to a series of nine petitions, or as few as two or three lawsuits. *See Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 538-39 (M.D. La. 2001) (declining to apply *USS-POSCO* test to nine petitions); *ERBE*, 629 F.3d at 1291 (same as to three lawsuits); *Amarel v. Connell*, 102 F.3d 1494, 1519-20 (9th Cir. 1996) (same as to two lawsuits). Here, IPtronics alleges only four "representative" lawsuits, excluding the present lawsuit. *See* Complaint (D.I. 1), at ¶¶ 50-55. This is hardly sufficient to constitute a pattern or practice of filing improper lawsuits, as discussed above, and combined with the factual deficiencies noted above, the Complaint fails to state a claim upon which relief can be granted as a matter of law.

**V.      Conclusion**

IPtronics' Complaint cleverly omits critical reference to Avago's success in the ITC Investigation—namely, Avago's success in proving infringement of the '595 patent and in overcoming IPtronics' invalidity attack on the '456 patent.  Avago's success in the ITC Investigation proves that action was not objectively baseless so as to strip Avago of its First Amendment immunity under *Noerr-Pennington*.  Moreover, the ITC itself commenced the investigation after reviewing Avago's submission, and Avago presented substantial evidence at the merits hearing on infringement of the '456 patent.  Therefore, this Court should grant Avago's Motion and dismiss the Complaint with prejudice because IPtronics' Complaint fails to state a cause of action upon which relief can be granted.

Dated:  March 9, 2015                                  Respectfully submitted,

                                                                       Foley & Lardner LLP


                                                                       By:   */s/ Nancy L. Stagg*
                                                                                Nancy L. Stagg
                                                                                Attorneys for Defendants
                                                                                AVAGO TECHNOLOGIES U.S. INC.,
                                                                                AVAGO TECHNOLOGIES GENERAL IP
                                                                                (SINGAPORE) PTE. LTD., AVAGO
                                                                                TECHNOLOGIES TRADING LTD., AND
                                                                                AVAGO TECHNOLOGIES
                                                                                INTERNATIONAL SALES PTE. LTD.

4823-3182-9538.1

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served to all counsel of record, who are deemed to have consented to electronic service via the court's CM/ECF system.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed at San Diego, California.

Dated:  March 9, 2015

*/s/ Nancy L. Stagg*
Nancy L. Stagg