1

2

3    **UNITED STATES DISTRICT COURT**

4    **NORTHERN DISTRICT OF CALIFORNIA**

5    **SAN JOSE DIVISION**

6

7    IPTRONICS INC., et al.,                    Case No.  14-cv-05647-BLF

          Plaintiffs,

8

          v.                                    **ORDER DENYING MOTION TO**
9                                               **DISMISS**

10   AVAGO TECHNOLOGIES U.S., INC., et          [Re:  ECF 43]
     al.,

11        Defendants.

12

13        This is an antitrust action based upon allegedly sham patent litigation.  Before the Court is

14   the defendants' Motion to Dismiss Complaint with Prejudice.  Defs.' Mot., ECF 43.  The Court

15   heard oral argument on June 11, 2015 and thereafter took the matter under submission.  For the

16   reasons stated herein, the Motion to Dismiss is DENIED.

17   **I.    BACKGROUND**

18        On a motion to dismiss, a court may generally consider allegations contained in the

19   pleadings, exhibits attached to or incorporated by reference into the complaint, and matters

20   properly subject to judicial notice.  5B Wright & Miller Fed. Prac. & Proc. Civ. § 1357 (3d ed.

21   2004); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The

22   allegations in the instant complaint draw heavily from a prior proceeding before the United States

23   International Trade Commission ("ITC").  As such, both sides have filed Requests for Judicial

24   Notice ("RJN") of documents from the record of the ITC proceeding in connection with the

25   briefing on the motion before the Court.  *See* Defs.' RJN, ECF 41-2; Pls.' RJN, ECF 55-18.  Both

26   RJNs are GRANTED, as the ITC documents are matters of public record and neither side disputes

27   the authenticity of the other's documents.  Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa*

28   *USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Of course, a number of the ITC documents

1  submitted by both sides are heavily redacted, and the parties have failed to agree to terms that

2  would allow the unredacted documents to be filed under seal with the Court.  As such, many of the

3  documents are of dubious value to the Court's consideration.

4  The Court herein considers the factual allegations in the Complaint, as well as relevant

5  content from the judicially noticeable ITC documents, in ruling on the present motion.

6  **A.    Factual Overview**

7  Plaintiffs are Mellanox Technologies Denmark ApS, formerly known as IPtronics A/S, and

8  its wholly-owned subsidiary IPtronics Inc. (collectively, "IPtronics").  Compl. ¶¶ 2-3, ECF 1.[1]

9  Both were acquired by Mellanox Technologies Ltd. in July 2013, and IPtronics was dissolved in

10  December 2013.  *Id.* ¶ 3.  Defendants are Avago Technologies U.S. Inc., Avago Technologies

11  General IP (Singapore) Pte. Ltd., Avago Technologies Trading Ltd., and Avago Technologies

12  International Sales Pte. Ltd. (collectively, "Avago").[2]

13  Since at least June 29, 2010, Avago and IPtronics have been embroiled in litigation over

14  Avago's patents.  On that date, Avago filed an action in this district alleging that IPtronics

15  infringes two Avago patents: U.S. Patent Nos. 5,359,447 (the "'447 Patent") and 6,947,456 (the

16  "'456 Patent").  *See Avago Techs. U.S., Inc., et al. v. IPtronics, Inc., et al.*, Case No. 5:10-CV-

17  02863-EJD (PSG), ECF 1 (filed June 29, 2010).  That action was stayed in 2013 after Avago

18  petitioned the International Trade Commission ("ITC") to institute an investigation against

19  IPtronics and other respondents.  The ITC action is the genesis of this lawsuit.

20  **i.    The ITC Complaint**

21  On September 24, 2012, Avago filed a complaint in the ITC pursuant to 19 U.S.C. § 1337

22  asserting infringement of the '456 Patent and U.S. Patent No. 5,596,595 ("'595 Patent").  *See*

23  Compl. ¶ 16; *see also* Decl. of Xavier M. Brandwajn, ECF 55-3, Exh. 2 (excerpt of ITC

24  complaint, hereinafter "ITC Compl.").  The named respondents were IPtronics A/S and IPtronics

25

26  [1] Publicly available redacted version at ECF 33.

27  [2] Defendant Avago Technologies Fiber IP (Singapore) Pte. Ltd., named in the original complaint,

28  was voluntarily dismissed on February 26, 2015.  ECF 35.

United States District Court
Northern District of California

1   Inc. (the plaintiffs in this action); FCI USA, LLC, FCI Deutschland GmbH, and FCI SA

2   (collectively, "FCI"); and Mellanox Technologies, Inc. and Mellanox Technologies Ltd.

3   (collectively, "Mellanox"[3]).

4         IPtronics' vertical cavity surface emitting laser ("VCSEL") driver products were solely

5   accused of infringing the '456 Patent, which is titled "Open-Loop Laser Driver having an

6   Integrated Digital Controller" and relates to "laser drivers for generating drive waveforms to drive

7   a single VCSEL or an array of VCSELs for use in an optical communications network."  Compl. ¶

8   16; *see also* Decl. of Ary Chang, ECF 41-3, Exh. 2 (ALJ's Initial Determination in underlying ITC

9   action, hereinafter "ALJ Order") at 14 (list of accused IPtronics products).  As IPtronics explains

10  in the Complaint in this action, "VCSELs and VCSEL drivers are *components* used in transceiver

11  (i.e., a transmitter and a receiver) modules and/or active optical cables ("AOC") to facilitate high-

12  speed, optical communication of data."  Compl. ¶ 17 (emphasis added).  IPtronics' VCSEL drivers

13  "are capable of operation with a wide range of VCSELs," which vary from manufacturer to

14  manufacturer.  *Id.* ¶¶ 17, 19.  Thus, in addition to accusing IPtronics' VCSEL drivers of infringing

15  the '456 Patent, Avago also accused certain Mellanox and FCI transceivers and AOCs that

16  incorporated the accused IPtronics drivers.  ALJ Order at 14-16, 95.

17        In the same ITC proceeding, Avago also accused Mellanox and FCI transceivers and

18  AOCs of infringing Avago's '595 Patent, which is titled "Current and Heat Spreading Transparent

19  Lasers for Surface-Emitting Lasers" and "generally discloses and claims a design for a top-

20  emitting . . . VCSEL."  *Id.* at 9.  The patent appears to pertain only to VCSELs, as opposed to

21  VCSEL drivers, and Avago did not accuse any IPtronics products of infringing this patent.

22  Instead, Avago alleged that Mellanox and FCI products "that incorporate VCSELs manufactured

23  by ULM Photonics" infringed the '595 Patent.  ITC Compl. ¶ 123.[4]

24  _____

25  [3] Not to be confused with plaintiff in this action, Mellanox Technologies Denmark ApS, which
    was known as "IPtronics A/S" until it was acquired by Mellanox Technologies Ltd.

26  [4] It is possible that the same Mellanox and FCI transceivers and AOCs containing VCSELs
27  accused of infringing the '595 Patent also contained IPtronics' VCSEL drivers accused of
    infringing the '456 Patent.  *See* ALJ Order at 14-16 (listing Mellanox and FCI products accused of
    infringing both the '456 and '595 Patents broken down by item number, with columns for
28  "VCSEL" and "Driver").  Because Avago filed only a redacted version of the ALJ's order,

United States District Court
Northern District of California

1    By regulation, the ITC requires that a patentee plead its infringement theory with

2  specificity, including, when practicable, providing "a chart that applies each asserted independent

3  claim of each involved U.S. patent to a representative [accused product]."  19 C.F.R. §

4  210.12(a)(9)(viii).  In support of its '456 Patent infringement claims, Avago submitted with its

5  ITC complaint an infringement claim chart; a declaration from its expert witness, Dr. Dennis

6  Deppe; and IPtronics datasheets/product briefs and reference designs.  Compl. ¶ 22.  On the basis

7  of Avago's complaint and supporting documents, the Commission instituted an investigation on

8  October 30, 2012.  *Id.* ¶ 27.

9    **ii.  The Investigation and the Administrative Law Judge's Initial Determination**

10    Each claim in the '456 Patent has two distinct limitations "requiring that the drive

11  waveform contain 'a negative peak portion' and 'at least one parameter for affecting the negative

12  peak portion of the drive waveform.'"  *Id.* ¶ 16.  Due to the manner in which VCSELs interact

13  with VCSEL drivers, and because VCSELs differ by manufacturer, IPtronics asserts that "it is not

14  possible to determine whether a driver itself infringes without, among other things, knowing the

15  precise VCSEL that is being driven."  *Id.* ¶ 20.  According to IPtronics, Avago "should have

16  known this as part of its pre-filing investigation."  *Id.*

17    Avago's ITC Complaint and its assertion that the IPtronics products infringed '456 Patent

18  depended entirely on Dr. Deppe's declaration, which relied upon an IPtronics product brief and an

19  IPtronics reference design document.  *Id.* ¶ 23.  Dr. Deppe did not test any IPtronics product;

20  instead, he declared that two optical eye-diagrams taken from the IPtronics reference design

21  document showed that the waveform limitations of the '456 Patent can be found within the

22  IPtronics products.  *Id.* ¶¶ 24-26.  On March 19, 2013, Dr. Deppe was deposed as part of the ITC

23  investigation.  During the deposition, he admitted that the optical eye diagrams "*were not*

24  *sufficient* to demonstrate the presence of a negative peak portion in the drive waveform of a

25  VCSEL driver."  *Id.* ¶ 28 (emphasis in original).

26    Avago then brought in Frederick Miller, a second technical expert to bolster its '456 Patent

27

28

however, the Court is unable to confirm that hypothesis.

United States District Court
Northern District of California

1    infringement case.  Mr. Miller developed and conducted a series of physical tests on a small

2    number of accused IPtronics products and concluded that they infringed the '456 Patent.  *Id.* ¶¶

3    30-31.  This conclusion was challenged by IPtronics' expert, Dr. Michael Lebby, who testified

4    that Mr. Miller's testing was "insufficient to establish that the drive waveform output by the

5    IPtronics VCSEL drivers includes a negative peak portion."  *Id.* ¶ 32.

6            The Commission's independent Investigative Staff of the Office of Unfair Import

7    Investigations ("Staff") agreed with IPtronics and found Avago's evidence of infringement

8    unpersuasive with respect to the '456 Patent.  *Id.* ¶ 33.  The presiding Administrative Law Judge

9    ("ALJ") likewise sided with IPtronics in his Initial Determination and found that Mr. Miller's test

10   results were "unreliable and entitled to no weight."  *Id.* ¶ 35; ALJ Order at 99.  Indeed, the ALJ

11   went so far as to state that "Mr. Miller acknowledged that this testing was not recognized in the

12   industry, failed as many times as it succeeded, and Mr. Miller only presented selected data from

13   the tests that did 'succeed.'"  ALJ Order at 100.  Further debunking Avago's other evidence of

14   infringement, the ALJ noted that Avago relied upon drawings in IPtronics data sheets that were

15   "theoretical only" and that "even Avago's expert admitted that they are mere cartoons that have

16   errors."  *Id.* at 103.  Elsewhere in this report, the ALJ noted that "[b]oth Dr. Lebby and Avago's

17   own corporate witness testified . . . that the datasheets alone are insufficient to establish whether or

18   not the claimed negative peak portion is present in the drive waveforms."  *Id.* at 196; *accord*

19   Compl. ¶¶ 35-36.  The ALJ therefore determined that Avago had failed to demonstrate by a

20   preponderance of the evidence that the accused IPtronics products infringed the '456 Patent and

21   concluded that no violation of the Tariff Act had occurred in connection with the importation of

22   IPtronics' accused VCSEL driver products.  ALJ Order at 216, 218.  The ALJ did, however, side

23   with Avago in finding that the '456 Patent was not invalid.  *Id.* at 216.

24           In the same report, the ALJ found that Avago had sufficiently proven that the accused

25   Mellanox/FCI products infringed Avago's '595 Patent and that the '595 Patent was not invalid.

26   *Id.* at 216, 218.  The ALJ recommended a limited exclusion order against all Respondents'

27   products that infringed the '595 Patent, as well as a cease-and-desist order against the

28   Mellanox/FCI Respondents.  *Id.* at 236; *see also* Chang Decl. Exh. 3.

United States District Court
Northern District of California

5

### iii.  The Commission's Final Order

Based on the ALJ's recommendation, and after hearing objections from the parties, the Commission issued its final order on April 23, 2014.  With respect to the '456 Patent, the Commission affirmed the ALJ's "infringement and domestic industry (technical prong) determinations with certain modifications in his rationale."  With respect to the '595 Patent, the Commission likewise affirmed the ALJ's infringement determinations with some modification. The Commission ordered relief consisting of:

> (1) A limited exclusion order prohibiting the unlicensed entry of certain optoelectronic devices for fiber optic communications, components thereof, and products containing the same covered by one or more of claims 14 and 19 of U.S. Patent No. 5,596,595 and that are manufactured abroad by or on behalf of, or imported by or on behalf of, respondents IPtronics A/S; IPtronics Inc.; FCI SA; FCI Deutschland GmbH; FCI USA, LLC; Mellanox Technologies, Ltd.; and Mellanox Technologies, Inc.; and

> (2) cease and desist orders prohibiting importing, selling, marketing, advertising, distributing, transferring (except for exportation), and soliciting U.S. agents or distributors for, optoelectronic devices for fiber optic communications, components thereof, and products containing the same covered by one or more of claims 14 and 19 of U.S. Patent No. 5,596,595 and that are manufactured abroad by or on behalf of, or imported by or on behalf of, respondents FCI USA, LLC and Mellanox Technologies, Inc.

*See* Chang Decl. Exh. 3.

The parties have since returned to district court and are continuing to actively litigate the patent infringement claims in *Avago Techs. U.S., Inc., et al. v. IPtronics, Inc., et al.*, Case No. 5:10-CV-02863-EJD (PSG).

### B.  IPtronics' Allegations in this Lawsuit

IPtronics contends that Avago's ITC investigation against IPtronics in connection with the '456 Patent was a sham aimed at impeding competition and gaining monopoly power for Avago in the market for 40Gb/s or higher band rate AOCs and Transceivers, or, in the alternative, the market for the 56Gb/s InfiniBand FDR AOCs.  Compl. ¶¶ 72-83.  As such, IPtronics asserts a singular claim against Avago for attempted monopolization in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

United States District Court
Northern District of California

1    Avago's filing of an ITC complaint based upon IPtronics documents that were later

2 determined insufficient to show key limitations of the '456 Patent demonstrates, in IPtronics'

3 view, that Avago could not reasonably have expected success on the merits.  Avago's continuing

4 prosecution of the investigation and hiring of a new expert to conduct new (and ultimately

5 rejected) testing after Dr. Deppe admitted in deposition that the drawings couldn't show

6 infringement is further evidence that Avago's case was meritless from the outset, according to

7 IPtronics.  *See* Compl. ¶¶ 20, 22-31, 35-36, 38-39.

8    IPtronics alleges that Avago pursued the baseless '456 Patent infringement theories in the

9 ITC with the subjective intent to harm competition and gain monopoly power.  *Id.* ¶¶ 40, 75-78.

10 Avago's conduct in the ITC moreover resembled that of a party seeking to prolong a case rather

11 than win it.  IPtronics claims that Avago admitted as much during business meetings and

12 settlement negotiations among the parties in 2013.  *Id.* ¶ 40-44.  IPtronics also alleges that Avago

13 has engaged in a pattern of competition suppressing litigation, asserting patent infringement

14 against "every one of the entities with which they have not otherwise collaborated," *id.* ¶ 49,

15 including Finisar Corporation, Emcore Corporation, STMicroelectronics Inc., and Cypress

16 Semiconductor Corporation, *id.* ¶¶ 50-54.

17    IPtronics asserts that Avago was ultimately successful in injuring IPtronics.  After Avago

18 commenced its infringement lawsuit, companies refused to do business with IPtronics, at least in

19 part because of the ongoing litigation.  Furthermore, IPtronics was purchased by Mellanox

20 Technologies, Ltd. "at a price much lower than that which it would have received absent the

21 Avago Defendants' anticompetitive conduct."  *Id.* ¶¶ 80-81.

22 **II.    LEGAL STANDARD**

23    "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

24 claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

25 *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

26 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

27 as true all well-pleaded factual allegations and construes them in the light most favorable to the

28 plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the

1    Court need not "accept as true allegations that contradict matters properly subject to judicial

2    notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

3    unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

4    (internal quotation marks and citations omitted).  While a complaint need not contain detailed

5    factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

6    relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

7    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

8    court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

9    "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those

10   facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556

11   (internal quotation marks omitted).

12   **III.     DISCUSSION**

13            Avago moves to dismiss the Complaint with prejudice on the ground that its actions in the

14   ITC are absolutely immune under the *Noerr-Pennington* doctrine, which takes its name from

15   *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and

16   *Mine Workers v. Pennington*, 381 U.S. 657 (1965).  *See* Defs.' Mot., ECF 43.  As more recently

17   explained in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508

18   U.S. 49 (1993) ("*PRE*"), the *Noerr-Pennington* immunity stands for the proposition that "[t]hose

19   who petition government for redress are generally immune from antitrust liability." *Id.* at 56; *see*

20   *also White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("*Noerr-Pennington* is a label for a form of

21   First Amendment protection; to say that one does not have *Noerr-Pennington* immunity is to

22   conclude that one's petitioning activity is unprotected by the First Amendment.").  Excepted from

23   that immunity, however, are government petitions that are "a mere sham to cover . . . an attempt to

24   interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144.

25            The sham litigation exception to *Noerr-Pennington* immunity requires an antitrust plaintiff

26   to demonstrate two things: first, that the prior lawsuit upon which the antitrust case is based was

27   "objectively baseless in the sense that no reasonable litigant could realistically expect success on

28   the merits" and second, that the subjective motivation behind the prior lawsuit was to directly

1    interfere with a competitor's business relationships.  *PRE*, 508 U.S. at 60-61.  "This two-tiered

2    process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court

3    will entertain evidence of the suit's *economic* viability."  *Id.* at 61 (emphasis in original).  In

4    addition to proving sham litigation, an antitrust plaintiff must of course still prove a substantive

5    antitrust violation.  *Id.*

6        In the present motion, the parties' narrow dispute centers on whether the allegations in the

7    Complaint can satisfy the objective prong of the *PRE* test for sham litigation.  On this front, the

8    Court must address two preliminary issues in dispute: (1) whether the Court must consider the

9    entire ITC proceeding in determining the applicability of the *Noerr-Pennington* immunity, and (2)

10   whether Avago "prevailed" against IPtronics in the ITC proceeding.

11       Avago submits that the Court should consider the entire ITC action in deciding whether the

12   prior lawsuit was objectively baseless.  Defs.' Mot. 11-13.  Because Avago prevailed on its '595

13   Patent infringement claims against Mellanox and FCI and successfully defended the '456 Patent

14   against invalidity, Avago argues that the ITC action could not have been objectively baseless as a

15   matter of law.  *Id.* at 13-15; 19.  IPtronics, in turn, argues that the Court may consider only the

16   portion of the ITC action pertaining to the '456 Patent because the '595 Patent was never asserted

17   against IPtronics.  Pls.' Opp. 9-10, 12-18, ECF 55.  If the Court looks only to the '456 Patent,

18   IPtronics unquestionably prevailed against Avago's infringement allegations, therefore rendering

19   it more likely that Avago's complaint was a sham to cover anticompetitive conduct.  *See id.* at 7-9.

20       Under the facts of this case, the case law does not clearly favor either side's position.

21   Avago contends that *PRE* and subsequent courts applying *PRE* all confirm that "the entire lawsuit

22   must be objectively baseless" such that "even if the plaintiff prevailed only on one of several

23   claims it asserted, the litigation in question could not, as a matter of law, be deemed objectively

24   baseless."  Defs.' Mot. 10; *see id.* at 10 n.7 (collecting cases).  That a plaintiff who prevails on

25   some claims but not others in a single lawsuit can claim the *Noerr-Pennington* immunity is the

26   dominant view in this circuit and around the country.  *See, e.g.*, *Dominant Semiconductors Sd.*

27   *Bhd. v. Osram GMBH*, 524 F.3d 1254 (Fed. Cir. 2008); *Breville Pty Ltd. v. Storebound LLC*, No.

28   12-CV-01783-JST, 2013 WL 1758742, at *8 (N.D. Cal. Apr. 24, 2013); *Meridian Project Sys.,*

United States District Court
Northern District of California

9

1    *Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005).  However, while

2    *PRE* states that "the *lawsuit* must be objectively baseless," 508 U.S. at 60 (emphasis added),

3    neither it nor any of the cases that Avago cited provides clear guidance on how the "lawsuit" is to

4    be defined when a lawsuit involves multiple defendants.  IPtronics contends that in a multi-party

5    ITC investigation wherein Avago accused different respondents' products of infringing different

6    patents, the "lawsuit" between Avago and IPtronics concerned only the '456 Patent—the only

7    patent that Avago asserted against IPtronics.  As IPtronics aptly notes, none of the cases that

8    Avago cited in its papers precludes this parsing of the ITC action.  *See* Pls.' Opp. 12-16.  Avago

9    offers nothing more compelling in its reply brief.

10          The Court concludes that in determining the applicability of *Noerr-Pennington* immunity

11   in this action, the *PRE* analysis may be applied solely to the '456 Patent infringement claims

12   against IPtronics, which constituted Avago's "lawsuit" against IPtronics.  Based upon the

13   unredacted information before the Court, it appears that the '595 Patent infringement claims and

14   accused products in the ITC action were severable from the '456 Patent infringement claims and

15   accused products.  In other words, Avago could have filed a separate complaint against IPtronics

16   and Mellanox/FCI concerning the products that infringed only the '456 Patent.[5]  Assuming as true

17   the assertion that Avago had no reasonable basis for accusing IPtronics, that Avago chose to join

18   its frivolous claims against IPtronics to an otherwise valid lawsuit against other defendants should

19   not preclude IPtronics from invoking the Sherman Act.  As the Ninth Circuit has explained,

20   "[b]ecause the *Noerr-Pennington* doctrine grows out of the Petition Clause, its reach extends only

21   so far as necessary to steer the Sherman Act clear of violating the First Amendment."  *Freeman v.*

22   *Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005).  "Immunity thus applies only to what

23   may fairly be described as petitions, not to litigation conduct generally."  *Id.*  Characterizing the

24   portion of Avago's ITC complaint accusing IPtronics products of infringing the '456 Patent as a

---

[5] As already noted, the Court cannot tell whether the Mellanox/FCI products accused of infringing the '456 Patent overlapped with the products accused of infringing the '595 Patent.  To the extent there was overlap, the rules of the ITC may preclude a separate complaint, though that issue is not before the Court.  Moreover, it is probable that Avago's primary concern in the ITC action was with excluding Mellanox/FCI transceivers and AOCs, and less with excluding IPtronics' VCSEL drivers, which are only one component of the accused Mellanox/FCI products.

1   separate "petition" to the Commission does not "do violence to the concept," as both Avago and

2   the Commission treated the '456 Patent and '595 Patent issues as separate and distinct. *See id.* To

3   hold otherwise would allow a patentee to engage in anticompetitive behavior by simply joining all

4   of its competitors in one lawsuit though it had meritorious claims against only one.

5         Regardless of how the ITC action is parsed, it is a basic premise of the *Noerr-Pennington*

6   doctrine that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and

7   therefore not a sham." *PRE,* 508 U.S. at 60 n.5.  Here, Avago contends that it prevailed against

8   IPtronics in the ITC because the commission entered a limited exclusion order against IPtronics.

9   Defs.' Reply 2-4, ECF 56.  IPtronics urges the Court to look past the wording of the exclusion

10  order, which it contends applies only to Mellanox and FCI, and to look at the ALJ's determination,

11  affirmed by the Commission, that Avago failed to prove that IPtronics' accused products infringed

12  the '456 Patent.  Pls.' Opp. 10-12.  The Commission's final order is indeed clear in affirming the

13  ALJ's initial determination, with some modification to the reasoning, that the accused IPtronics

14  products did not infringe the '456 Patent.  *See* Chang Decl. Exh. 3.  Curiously enough, however,

15  the final order does include IPtronics in a limited exclusion order against:

16          certain optoelectronic devices for fiber optic communications,
    components thereof, and products containing the same covered by
17  one or more of claims 14 and 19 of U.S. Patent No. 5,596,595 and
    that are manufactured abroad by or on behalf of, or imported by or
18  on behalf of, respondents IPtronics A/S; IPtronics Inc.; FCI SA; FCI
    Deutschland GmbH; FCI USA, LLC; Mellanox Technologies, Ltd.;
19  and Mellanox Technologies, Inc.

20  *See id.*  It is not immediately apparent from the final order why IPtronics is listed as a respondent

21  in connection with the '595 Patent because it is undisputed that Avago did not accused IPtronics

22  products of infringing the '595 Patent.  Nor is the Court able or inclined to probe the

23  Commission's reasoning on a motion to dismiss.  It is sufficient at this stage that the mere

24  inexplicable inclusion of IPtronics in the Commission's exclusion order does not controvert the

25  allegations in the Complaint, nor the ALJ's initial determination and the Commission's final order

26  itself, all of which indicate that Avago did not successfully convince anyone that the accused

27  IPtronics products infringed the '456 Patent.  Thus, the Court cannot hold at this stage in the

28  proceeding that Avago prevailed against IPtronics or that the ITC action was not a sham by virtue

United States District Court
Northern District of California

11

1    of such a victory.

2        Having determined that the *PRE* test applies only to the '456 Patent infringement "lawsuit"

3    between Avago and IPtronics and that Avago did not prevail against IPtronics in that suit, the

4    Court next turns to the allegations in the Complaint to determine whether IPtronics adequately

5    alleges that Avago's ITC complaint against it was objectively baseless.  A lawsuit is objectively

6    baseless if "no reasonable litigant could realistically expect success on the merits."  *PRE*, 508 U.S.

7    at 60.  Put differently, "[t]he existence of probable cause to institute legal proceedings precludes a

8    finding that an antitrust defendant has engaged in sham litigation," and "[p]robable cause to

9    institute civil proceedings requires no more than a 'reasonabl[e] belie[f] that there is a chance that

10   [a] claim may be held valid upon adjudication.'"  *Id.* at 62-63 (alteration in original) (quoting

11   *Hubbard v. Beatty & Hyde, Inc.*, 343 Mass. 258, 262 (1961)).

12       Avago argues that the allegations fail to demonstrate objective baselessness for four

13   principle reasons: (1) the ITC authorized an investigation based upon its complaint; (2) Avago

14   successfully defended the validity of the '456 Patent; (3) Avago presented "substantial evidence"

15   of infringement to the ALJ; and (4) IPtronics did not seek summary adjudication on the '456

16   Patent infringement claims.  Defs.' Mot. 15-22; Defs.' Reply 5, 10-14.  The Court finds all of

17   these arguments insufficient to defeat IPtronics' well-pleaded allegations that, when taken as true,

18   establish that Avago's suit lacked legal viability.

19       First, Avago has presented no controlling authority holding that the ITC's decision to

20   institute an investigation is, by itself, sufficient to shield an ITC complainant from antitrust

21   liability.  Indeed, at least one court has found that even an ALJ's initial determination of

22   infringement, though evidence that the ITC action is not a sham, "does not conclusively establish

23   that the action is not a sham."  *Mitsubishi Heavy Indus., Ltd. v. Gen. Co.*, 720 F. Supp. 2d 1061,

24   1066 (W.D. Ark. 2010) (citing *Boulware v. State of Nevada, Dep't of Human Res.*, 960 F.2d 793,

25   798 (9th Cir. 1992), for proposition that "initial success in a trial court is a factor to be considered

26   in determining whether litigation is sham but is not dispositive").  To be sure, the Commission

27   requires significantly more supporting information to be filed with an ITC complaint and reviews

28   complainants' filings for compliance with its rules.  *See* 19 C.F.R. § 210.10, 210.12.  That the

United States District Court
Northern District of California

1    Commission determined that Avago had complied with its filing requirements and voted to

2    institute an investigation, however, says nothing of the actual merits of the infringement theory

3    asserted against IPtronics.[6]  Moreover, the Court agrees with IPtronics that this argument elides

4    the gravamen of IPtronics' baselessness allegations: that Avago argued a theory of infringement in

5    its complaint based upon evidence that it quickly had to abandon once its own expert admitted that

6    the evidence was insufficient to demonstrate infringement.  *See* Pls.' Opp. 20-21.  The ITC's

7    decision to institute an investigation based upon representations that Avago's expert later retracted

8    can hardly serve to insulate Avago from antitrust liability.

9         Second, and for similar reasons, Avago's success in defending the '456 Patent against

10   invalidity is also unavailing.  IPtronics is not asserting that Avago's ITC complaint was

11   objectively baseless because Avago's patent was invalid.  Were that the basis for IPtronics' sham

12   litigation claim, the Commission's conclusion that the '456 Patent is not invalid would certainly

13   be relevant.  *See, e.g.*, *Sandisk Corp. v. STMicroelectronics, Inc.*, No. C 04-4379JF(RS), 2008 WL

14   4615605, at *10 (N.D. Cal. Oct. 17, 2008).  Because IPtronics' claim for sham litigation here rests

15   on Avago's lack of any probable cause to assert that IPtronics' products infringed the '456 Patent

16   in the first place—particularly with respect to the two waveform limitations of that patent—

17   Avago's success on invalidity is irrelevant.

18        Third, this Court is ill-equipped on a motion to dismiss to evaluate the substantiality of

19   Avago's evidence of infringement before the ITC.  It is enough at this stage that IPtronics has

20   alleged that Avago filed a complaint based upon documents later admitted to be insufficient to

21   prove infringement and that it pressed those infringement claims using documents and new expert

22   evidence that the ALJ also found insufficient to show what Avago claimed.  Those allegations are

23   not controverted by the judicially noticeable documents and are sufficient, when taken as true, to

24   establish that Avago could not reasonably have expected success on its patent infringement claims

25   against IPtronics.

26

27   _____

     [6] The Commission's published notice of institution of an investigation typically states that the

28   Commission has made no decision on the merits.

United States District Court
Northern District of California

1    Fourth, and finally, the fact that IPtronics did not pursue summary adjudication of

2    infringement is also not an appropriate issue to take up on a motion to dismiss.  There may be any

3    number of reasons why a party chooses not to seek summary judgment on even baseless claims,

4    and the Court declines to hold that IPtronics' litigation strategy should be used against it to shield

5    Avago from antitrust liability.

6    In sum, the Court finds that IPtronics' allegations of objective baselessness are sufficiently

7    well-pleaded to circumvent Avago's claim to *Noerr-Pennington* immunity at this stage.  This is

8    not to say that it is smooth sailing for IPtronics from this point forward, as the arguments by

9    Avago that this Court rejected on a motion to dismiss may gain more traction on a more fully

10   developed record.  At a minimum, Avago's arguments demonstrate that there may be significant

11   challenges to IPtronics' ability to prove objective baselessness down the road.[7]  Furthermore, to

12   this point, neither side has addressed the pending patent infringement lawsuit in this district, in

13   which Avago continues to accuse IPtronics of infringing the '496 Patent.  If Avago prevails on

14   infringement in that suit, IPtronics' antitrust claims could be mooted.[8]  *See PRE,* 508 U.S. at 60

15   n.5.  However weak Avago may believe IPtronics' claims to be on the merits, the Complaint is

16   well-pleaded and IPtronics must be afforded an opportunity to test its allegations of objective

17   baselessness on the merits.  *Twombly,* 550 U.S. at 556.

18

19

20

21

22

---

23   [7] Avago has not challenged by way of this motion the sufficiency of IPtronics' allegations of
     subjective intent and of attempted monopolization in violation of Section 2 of the Sherman Act.
24   As such, the Court does not consider Avago's subject intent to restrain competition through
     litigation, nor whether the IPtronics VCSEL driver products accused in the allegedly baseless ITC
25   action fall within the relevant market, which IPtronics alleges to be "the market for 40Gb/s or
     higher band rate Quad (4-channel) Small Form-factor Pluggable ('QSFP') short-reach InfiniBand
26   Active Optical Cables and Transceivers ('AOC' market)" or, in the alternative, "the market for the
     QSFP 56Gb/s short-reach InfiniBand FDR AOC segment of [the AOC] market ('InfiniBand'
27   market)."  Compl. ¶ 57.

28   [8] The Court makes no determination at this point whether a verdict for Avago in the patent
     infringement case would have any impact on IPtronics' antitrust claims in this action.

IV.     **ORDER**

For the foregoing reasons, Avago's Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: August 25, 2015

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

15